UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

        Plaintiff,

v.                                                          Case No. 07-13189
                                                                                     Honorable Julian Abele Cook, Jr.

J.O.A. CONSTRUCTION COMPANY., INC. and
JOHNSON O. AKINWUSI,

        Defendants.

ORDER

This case involves a dispute between the Plaintiff, Travelers Casualty and Surety Company of America, and the Defendants, J.O.A. Construction Company, Inc. ("JOA") and Johnson O. Akinwusi, over the terms of an indemnity agreement involving the issuance of performance bonds. On July 25, 2008, the Plaintiff filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. As of the date of this order, the Defendants have not filed any response to this motion.

For the reasons that have been stated below, the Plaintiff's motion will be granted.

I.

The Plaintiff filed its complaint in this cause on July 31, 2007, "seeking indemnification, collateral security, and access to Defendants' books and records, pursuant to the express provisions of an Indemnity Agreement executed by both Defendants, and also pursuant to Michigan's common law." According to the Plaintiff, JOA is a company that is involved in a multitude of construction

1

projects.[1] As the contractor for these construction projects, JOA was required to obtain the payment and performance bonds, which it sought to obtain from the Plaintiff. In order to induce these bonds to be issued, JOA, along with Akinwusi (as an individual indemnitor), executed a "General Agreement of Indemnity" ("Agreement") in favor of the Plaintiff on February 17, 2006. This Agreement provided that the "Indemnitors shall exonerate, indemnify and save [the Plaintiff] harmless from and against all Loss . . . ." Loss is defined in the Agreement as follows:

> All loss and expense of any kind or nature, including attorneys' and other professional fees, which [the Plaintiff] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [the Plaintiff's]: (a) making any investigation in connection with the Bond; (b) prosecuting or defending any action in connection with any Bond; © obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

The parties' Agreement also stated that "Indemnitors agree to deposit with [the Plaintiff], upon demand, an amount as determined by [the Plaintiff] sufficient to discharge any Loss or anticipated Loss. . . ." The terms within this Agreement contained the following language: "Indemnitors shall furnish upon demand, and [the Plaintiff] shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them . . . ."

The Plaintiff demanded collateral security from the Defendants on May 24, 2007. However, this demand was not met. The Plaintiff complains that it "has received and paid a significant

---

[1] As the Defendants did not file any response to the Plaintiff's motion, these facts remain undisputed.

number of claims on both the Payment Bonds and the Performance Bonds." As a result, the Plaintiff asserts that it has now paid (1) bond claims in the amount of $3,461,524.85 and (2) performance bond payments in the sum of $2,654,866.83.[2] It is also the contention by the Plaintiff that it, after having issued the bonds, has incurred costs, expenses, and fees in the amount of $512,603.47. On the other hand, there is evidence that the Plaintiff has recovered contract balances of $598,133.24 and other miscellaneous recoveries in the amount of $6,147.27. Thus, as of June 30, 2008, the Plaintiff has incurred a net loss of $6,024,714.64. Furthermore, the Plaintiff fears that it will continue to incur losses, all of which were caused by the issuance of the bonds and the enforcement of the Agreement. In addition, the Plaintiff notes that there are outstanding payment bond claims in the amount of $752,978.18, as well as a performance bond premium in the sum of $1,600,000. All in all, the Plaintiff contends that there remain unpaid claims of $2,352,978.18.

In their answer to the Plaintiff's complaint, the Defendants - without more - have only acknowledged that they signed the Agreement.

II.

In assessing a motion for summary judgment, the Court must examine the pleadings, discovery and disclosure materials on file, and any affidavits in a light that is most favorable to the non-moving parties. Fed. R. Civ P. 56©; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). Thus, it is the responsibility of the Court to determine "whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby,*

---

[2]According to the Plaintiff, all of these figures are accurate as of June 30, 2008.

*Inc.*, 477 U.S. 242, 250 (1986).

A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving [parties]." *Id*. at 248. Hence, a summary judgment must be entered if (1) the submitted evidence in support of the dispositive motion clearly suggests that the contested matter is "so one-sided that [the proponent] must prevail as a matter of law," *id*. at 252, or (2) the opponents fail to present evidence that is "sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Upon such a showing, the non-moving parties must act affirmatively in order to avoid the entry of a summary judgment in favor of the proponent . Fed. R. Civ. P. 56(e). More importantly, it should be noted that the mere presentation of a scintilla of supporting evidence is insufficient to offset an otherwise sufficiently submitted request for dispositive relief. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 252). Indeed, "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

III.

The Plaintiff proclaims that there are no genuine issues of a material fact in dispute in this case and, as such, it is entitled to a summary judgment as a matter of law. Specifically, it argues that the Defendants are obliged to "indemnify [the Plaintiff] and post collateral security with [the Plaintiff] under the express terms of the Indemnity Agreement, as well as provide access to their books and records."

An interpretation of a contract is generally a question of law. *Cutler v. Spens*, 191 Mich. 603, 615 (1916). Where the terms of a contract are clear, a court must uphold the parties'

agreement as written in the absence of fraud or mistake. *Electric Co. v. Pulp Paper Co.,* 278 Mich. 592, 596 (1937). In Michigan, indemnity contracts are construed in accord with the general rules for the construction of agreements. *Title Guaranty & Surety Co., v. Roehm*, 215 Mich. 586, 591-592 (1921). They are "to be enforced so as to effectuate the intentions of the parties." *Giguere v. Detroit Edison Co.,* 114 Mich. App. 452, 456 (1982), quoting *Gartside v. Young Men's Christian Ass'n*, 87 Mich. App. 335, 339 (1978).

It is clear from the Agreement that the Defendants specifically agreed to "exonerate, indemnify and save [the Plaintiff] harmless from and against all Loss . . . ." Moreover, the Defendants have not advanced any argument in opposition to the Plaintiff's opinion that it is entitled to be indemnified for its losses which stem from its accord with them under contract law.

In the opinion of the Court, the terms of the parties' Agreement are clear and unambiguous. Thus, it is the conclusion of the Court that there is no genuine issue of a material fact regarding the Plaintiff's indemnification claim. It is clear from the evidence that Defendants promised to indemnify the Plaintiff against all losses that may arise from the parties' execution of the Agreement. They have failed to do so. Thus the Court will grant the Plaintiff's motion for summary judgment as to this issue pursuant to Fed. R. Civ. P. 56. In so doing, the Court also grants leave to the Plaintiff to file a motion for an amended judgment that will reflect any additional losses, costs, expenses, and fees paid and incurred after June 30, 2008.

The Plaintiff also submits that the "Defendants are obligated to place collateral security with [it] pursuant to the . . . Agreement and under the common law." As noted above, the Plaintiff has received claims in the amount of $2,352,978.18 on bonds that have not yet been paid. The Agreement provides that the "Indemnitors agree to deposit with [the Plaintiff], upon demand, an

5

amount as determined by [the Plaintiff] sufficient to discharge any Loss or anticipated Loss . . . ." It should be noted that the Defendants acknowledged that they signed the Agreement and have not "by affidavits or as otherwise provided . . . set out specific facts showing a genuine issue for trial" as to this matter. Fed. R. Civ. P. 56(e)(2). Although the Plaintiff demanded collateral security from the Defendants in the amount of $2,000,000[3] on May 24, 2007, they have not complied with this demand.

The Court determines that (1) the Agreement is clear on this point and (2) there is no genuine issue of a material fact regarding the Defendants' obligation to provide the Plaintiff with good and sufficient collateral security. Thus the Court will, and does, grant the Plaintiff's motion for summary judgment as it relates to the issue of collateral security. In addition, the Court directs the Defendants to provide collateral security to the Plaintiff in the amount of $2,352,978.18. The Plaintiff is also permitted to file a motion which, if granted, would allow it to proffer an amended judgment for the collateral security to cover any claims received after June 30, 2008.

Finally, the Plaintiff asks the Court to require the Defendants to allow it to have an "immediate access to its books, records and accounts, for review and copying." In support of this request, the Plaintiff points to ¶10 of the Agreement which states, in pertinent part, that the "Indemnitors shall furnish upon demand, and [the Plaintiff] shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them."

---

[3] As of June 30, 2008, the current pending claims and, therefore, the Plaintiff's demand for collateral security, totaled $2,352,978.18.

Once again, the Defendants neither dispute that they signed the Agreement nor dispute the Plaintiffs' assertion that it imposes a clear obligation upon them. Inasmuch as the Court does not believe that there is a genuine issue of a material fact relating to the requirement that the Defendants must allow the Plaintiff with access to its books, records, and accounts. Therefore, the Court will grant the Plaintiff's motion for summary judgment on this issue as well. As such, the Defendants are directed to provide the Plaintiff with access to their books, records, and accounts, as provided for in the Agreement, within a period of ten (10) days of the entry of this order.[4]

IV.

For all of the reasons that have been set forth above, the Court grants the Plaintiff's motion for a summary judgment. In so doing, the Court (1) enters a judgment in favor of the Plaintiff and against the Defendants, JOA and Akinwusi, in the amount of $6,024,714.64, which represents the Plaintiff's losses, costs, expenses, and fees as of June 30, 2008; (2) enters a judgment that will require the Defendants to post collateral security with the Plaintiff in the amount of $2,352,978.18; (3) grants the Plaintiff's request to file a motion for an amended judgment for any additional claims received or any additional losses, costs, expenses, or fees incurred by the Plaintiff after June 30, 2008 that are related to the Agreement; (4) orders the Defendants to provide the Plaintiff with access to its books, records, and accounts, as provided for in the Agreement, within a period of ten (10) days of the entry of this order.

---

[4]The Plaintiff also makes several arguments regarding its rights under the common law. However, inasmuch as the Court has decided that the Plaintiff is entitled to relief under the parties' contract, it will be unnecessary to address these common law claims.

IT IS SO ORDERED.

Dated: <u>March 31, 2009</u>             <u>s/Julian Abele Cook, Jr.</u>
     Detroit, Michigan            JULIAN ABELE COOK, JR.
                               United States District Court Judge

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2009.

                             <u>s/ Kay Doaks</u>
                             Case Manager