UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

                                       Case No. 07-13189
        Plaintiff,                Honorable Julian Abele Cook, Jr.

v.

J.O.A. CONSTRUCTION COMPANY, INC. and
JOHNSON O. AKINWUSI,

        Defendants.

## ORDER

This case arises out of a lawsuit filed by the Plaintiff, Travelers Casualty and Surety Company of America, against the Defendants, J.O.A. Construction Company, Inc. ("JOA") and Johnson O. Akinwusi, over the terms of an Indemnity Agreement involving the issuance of performance bonds on various construction projects. On March 31, 2009, the Court entered an order which granted a motion for a summary judgment in favor of the Plaintiff's claims. In granting the motion, the Court noted that Defendants had not filed any response to the Plaintiff's request.

The Defendants appealed the Court's order on April 30, 2009, and on October 9, 2009, the Defendants filed a motion pursuant to Fed. R. Civ. 60(b) for relief from the judgment, invoking the remand procedure set forth in *First National Bank v. Hirsch*, 535 F.2d 343 (6th Cir. 1976).

For the reasons that have been stated below, the Court would not be disposed to grant the Plaintiffs' Rule 60(b) motion.

I.

The Plaintiff, Travelers Casualty and Surety Company of America, ("Travelers"), is a Connecticut corporation that issues surety bonds on behalf of contractors. The Defendant, J.O.A. Construction Company, Inc. ("JOA") has been in the construction business for commercial and government contracts since 1989. Its sole owner during that time has been the other Defendant, Johnson O. Akinwusi.

On February 17, 2006, the parties entered into a General Agreement of Indemnity which provided that Travelers would act as a surety by issuing payment and performance bonds on behalf of the Defendants with respect to various construction projects. In return, the Defendants, both of whom signed the Indemnity Agreement as indemnitors, agreed to, amongst other things, "exonerate, indemnify and save [Travelers] harmless from and against all Loss." (Indemnity Agreement at ¶ 3). The word "Loss" was defined as:

> All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [Travelers']: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

Other provisions of the Indemnity Agreement that are relevant to this dispute include:

(1) An indication that Travelers "shall have the right, in its sole discretion, to determine for itself and indemnitors whether any claim, demand or suit brought against Company or any indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors." (Indemnity Agreement at ¶ 4);

(2) An agreement by the Defendants "to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss. . . ." (*Id.* at ¶ 5);

(3) A notation that "[i]n the event of a Default, Indemnitors assign, convey and transfer to Company all of their rights, title and interests in Property, and [that] [Travelers] shall have a right in its sole discretion to: (a) take possession of the work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof; . . . (e) require any Obligee to withhold payment of Contract funds unless and until Company consents to its release; . . . . (*Id.* at ¶ 6);

In turn, the Agreement defined the word "Default" as (a) a declaration of Contract default by any Obligee; . . . (c) a breach of any provision of this Agreement; [and] (d) failure to make payment of a properly due and owing bill in connection with any Contract . . . ." (*Id.* at ¶ 1);

Moreover, "Obligee" is defined as "[a]ny person or entity in whose favor a Bond has been issued, and that person's or entity's successors and assigns. . . ." (*Id.*); and finally,

(4) An agreement that the "Indemnitors shall furnish upon demand, and [Travelers] shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them. . . ." (*Id.* at ¶ 10).

Moreover, Travelers claimed that it had received and paid a "significant number" of claims related to payment and performance bonds it had issued on behalf of the Defendants on various projects. Those claims included multiple payments for a project for the United States Army called the Total Army School System Fort Custer Training Center ("TASS Project") located in Battle Creek, Michigan, where Travelers notes that on February 23, 2007, the Government indicated to JOA by letter that "JOA Construction's right to proceed under [the] contract is terminated." The Defendants dispute the validity of any payments related to TASS, inasmuch as they believe that the project was 99.212% complete in their view, and no less than 96.7% complete according to the Army's tabulations. Moreover, the Defendants allege that the Army (1) wrongfully refused to allow the Defendants to remedy some of the alleged deficiencies and (2) and failed to honor an oral

3

agreement that an independent engineer would evaluate the TASS project and determine what, if anything, was needed to complete the project.

According to the Defendants, on April 12, 2007, Travelers sent disparaging letters about the Defendants to various entities with whom the Defendants had prior or current construction contracts. The letters indicated that subcontractors and suppliers working with the Defendants had "asserted claims for payment" to Travelers. Moreover, Travelers demanded that the recipients of the letters release no further funds under their contracts with the Defendants absent advance written consent and instruction from Travelers.[1] The Defendants note that Travelers then took over their construction projects, effectively freezing the company's assets and commandeering its business affairs. To the extent that this alleged conduct prevented the Defendants from completing and performing under their contracts, the Defendants maintain that Travelers (1) excused JOA's continued performance, (2) eliminated its own rights of indemnity, and (3) breached its contract with the Defendants.

The day after Defendant Akinwusi received Travelers' April 12, 2007 letters, he suffered a major stroke which resulted in lengthy hospitalization and rehabilitation. Shortly thereafter, on July 31, 2007, Travelers filed this lawsuit against the Defendants, who assert that Akinwusi's illness required them to rely heavily on their hired counsel, John Grylls, to handle the litigation. Grylls, who had been their attorney for sixteen years, answered Travelers' complaint, prepared a joint discovery plan with opposing counsel, and filed a witness list for the Defendants. Nevertheless, the Defendants allege that he conducted no discovery. The record further reflects that Grylls did not

---

[1] According to Travelers' original motion for summary judgment, it demanded collateral security from the Defendants on May 24, 2007, but none was forthcoming.

respond to either of two motions filed by Travelers, including a dispositive motion for a summary judgment requesting more than six million dollars ($6,000,000.00), which was ultimately granted by the Court.

The Defendants believe that Grylls' omissions can be explained by a conflict of interest the attorney had but did not resolve or disclose to the Court. The Defendants point to a letter written by Grylls to Akinwusi and JOA dated August 20, 2007 which indicated Travelers' desire to hire Grylls to represent the company in a separate arbitration in which it had been sued along with JOA as a co-defendant by Consolidated Electric.[2] Grylls was already acting as JOA's attorney as part of that arbitration. The letter acknowledged that the acceptance of payment from Travelers would create a conflict of interest requiring JOA and Akinwusi's consent. It also noted that (1) no tension existed between the interests of JOA and Travelers in the Consolidated Electric case, (2) signing the letter would mean that the Defendants would not seek to disqualify Grylls' firm in any future indemnity action against the Defendants by Travelers, should Travelers continue to work with Grylls, and (3) the Defendants should speak to outside counsel before signing the letter. The Defendants assert that they never waived the conflict. They also allege that Grylls' representation of Travelers continued without their consent. They note that Travelers paid Grylls more than twenty-thousand ($20,000.00) dollars for his representation in the litigation against Consolidated Electric.

Travelers challenges the Defendants' characterization of Grylls' purported conflict. It notes that it allowed Grylls to represent the Company during the Consolidated Electric arbitration in an

---

[2]According to Travelers, the Consolidated Electric litigation was one of many lawsuits against the Defendants initiated by various suppliers and contractors on JOA projects.

effort to conserve resources, inasmuch as Travelers' position was completely aligned with that of the Defendants. Furthermore, Travelers claims that it waived the conflict, assumed the Defendants did the same, and allowed Grylls to represent both Travelers and JOA during the Arbitration hearing, which at all times was apparently attended by a JOA representative. Travelers also notes that contrary to the Defendants' assertions, Grylls participated in discovery in this case by serving Travelers with interrogatories and requests for the production of documents.

As noted above, without having the benefit of a response from the Defendants, the Court granted Travelers' request for a summary judgment in the amount of $6,024,714.64.[3] The Defendants filed a claim of appeal[4] from this judgment on April 30, 2009, and, after a receiving a determination from the Court of Appeals that the judgment was final, they later filed, pursuant to *Hirsch, supra,* the request for the Court to consider their motion for relief for judgment which is now pending before the Court.

II.

In filing their motion, the Defendants first allege that Grylls had an actual conflict of interest to which they objected, and which ultimately deprived them of fair representation and resulted in a substantial adverse judgment. Although the Defendants did not raise this issue before judgment

---

[3]Travelers concedes that it received additional contract balances after the Court entered the judgment in its favor, but it claims that it has paid millions more in additional losses, costs, expenses and attorney fees for a total amount of $10,012,216 for which the Defendants are allegedly liable.

[4]The Defendants complain that they tried to retain an attorney, Elliott Hall, to represent them on appeal, but Hall's firm, Dykema Gossett, PLLC, had previously represented Travelers in another case. The Defendants note that Travelers refused to waive the conflict of interest, thereby precluding Hall's representation. Accordingly, the Defendants posit that Travelers was sensitive to these sorts of ethical issues, and should have been so aware with regard to Grylls' dual representation.

was entered, the Court agrees that it is timely[5] and may be considered for the first time here as part of the Defendants' direct appeal.[6]

They ask the Court to apply rule 60(b) by comparing the situation presented here (i.e. the entry of a judgment after a party fails to respond to a summary judgment motion) to the circumstance that arises when a party is deemed liable through the entry of a default judgment. As such, the Defendants insist that (1) Travelers will not be prejudiced by vacating the judgment, (2) the Defendants have several meritorious defenses,[7] and (3) the Defendants engaged in no culpable

---

[5] Motions brought under Fed. R. Civ. P. 60(b)(1)-(3) must be made no more than a year after the entry of the judgment. Furthermore, motions raised under any other provision "must be made within a reasonable time," which must be defined according to the factual circumstances of each case. *Smith v. Secretary of Health and Human Services,* 776 F.2d 1330, 1333 (6th Cir. 1985). Here, the motion was made after a notice of appeal was filed, and within just over a month after the Defendants reasonably sought and received confirmation from the Court of Appeals that the judgment was final and subject to appellate jurisdiction. Under these facts, the Court finds the Defendants' motion to have been raised within a reasonable time as required by Rule 60(b).

[6] In *First Nat. Bank of Salem, Ohio v. Hirsch,* 535 F.2d 343, 345 -346 (6th Cir. 1976), the Court of Appeals for the Sixth Circuit opined that "the party seeking to file a Rule 60(b) motion . . . should have filed that motion in the district court. If the district judge is disposed to grant the motion, he may enter an order so indicating and the party may then file a motion to remand in this court."

[7] As will be discussed in more detail below, the defenses that JOA and Akinwusi now wish to raise include that (1) Travelers improperly declared a default under the Indemnity Agreement; (2) JOA's and Akinwusi's failure to perform on the Army TASS project was excused when a condition precedent to its performance never occurred under the terms of a new, oral agreement between the parties that modified their original contract; (3) Travelers' decision to freeze the Defendants' assets (through the issuance of the April 12, 2007 letters) hindered the Defendants' completion of both the TASS and the Houston Projects, thus excusing continued performance; (4) Travelers may not seek indemnity from the Defendants based on damages flowing from its own breach of the Indemnity Agreement; (5) Travelers failed to give the Defendants prior notice and an opportunity to dispute the alleged claims that triggered indemnification, and did not adequately identify the portions of the Indemnity Agreement that gave rise to Travelers' supposed indemnification rights; and (6) Akinwusi is not personally liable for indemnification covering contracts entered into before the date of the Indemnity Agreement.

conduct that led to the entry of a summary judgment.

Nevertheless, the Court rejects the Defendants' request to analogize the procedural history of this case to the entry of a judgment obtained by default. Here, the Court rendered a judgment for the Plaintiff after fully examining the case on its merits and determining that the Indemnity Agreement clearly and unambiguously obliged the Defendants to (1) hold Travelers harmless from Loss, as defined by the contract, (2) provide Travelers with collateral security and (3) allow Travelers to have access to its books, records, and accounts. (3/31/09 Order at 5-6). The Court reached its decision independently, after evaluating Travelers' claims and reviewing the most relevant terms of the parties' contract. Summary judgment was not granted simply because the Defendants failed to file a response. To the contrary, the Court reached this result because that outcome was warranted by the facts and circumstances. By contrast, when a party prevails in a lawsuit because of the entry of a default judgment, there is no substantive, independent analysis; by definition, the plaintiffs' claims are granted automatically, without regard to the actual merits of the underlying claim. *See generally,* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default."); Fed. R. Civ. P. 55(b) ("If the plaintiff's claim is for a sum certain . . . the clerk . . . must enter judgment for that amount . . . against a defendant who has been defaulted for not appearing. . . ."). In the Court's view, the two situations are distinct, and, unlike the circumstance presented by the entry of a default judgment, the inaction of the Defendants' attorney here was hardly the sole or even the primary basis for the unfavorable judgment. Accordingly, the Court declines the invitation to apply the Rule 60(b) standards here in the same way it would if the judgment were entered against the Defendants by default.

Under Rule 60(b), a court may vacate a final judgment for, *inter alia,* the following reasons: (3) fraud . . ., misrepresentation, or misconduct by an opposing party; (5) [a finding that] applying [the judgment] prospectively is no longer equitable; or (6) any other reason that justifies relief." Relief under Rule 60(b) is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (citations omitted). Accordingly, a party seeking relief under Rule 60(b) must establish the grounds for its request by presenting clear and convincing evidence. *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448 (6th Cir. 2008).

The initial basis of the Defendants' request for relief is, as noted above, that their attorney violated their right to be represented by conflict-free counsel, and that the undisclosed conflict caused him to neglect the case, deprive them of several meritorious defenses, and expose the Defendants to extensive financial liability. The Defendants raise this issue under Rule 60(b)(3) as involving "fraud" and, alternatively, under the so-called "catch all" provision of Rule 60(b)(6).

To vacate a judgment on the basis of Rule 60(b)(3), a Defendant must establish fraud, misrepresentation, or misconduct by an opposing party. Fraud is defined as "the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment." *Info-Hold, supra* at 456. To establish the existence of a fraud upon the Court, the Defendants must identify conduct by an officer of the court that (1) is "directed to the judicial machinery itself,", (2) is intentionally false, willfully blind to the truth, or in reckless disregard of the truth, (3) is a positive averment (or a concealment when one is under a duty to disclose); and (4) deceives the Court. *Johnson v. Bell,* 605 F.3d 333, 339 (6th Cir. 2010) (citing *Demjanjuk v. Petrovsky,* 10 F.3d 338, 348 (6th Cir. 1993)). The Defendants have not

9

done so here.

Even assuming that factors (1) and (3) above are satisfied, the Defendants have not presented clear and convincing evidence of factors (2) and (4), i.e. that Grylls acted with fraudulent intent, or that his omissions deceived the Court. As to the second element, the Defendants' pleadings devote scant attention to explaining why one should infer that Grylls' omissions were made with an intent to defraud. To the contrary, the record suggests that Grylls did not conceal the conflict from the relevant parties, but disclosed it promptly –in writing – both to the Defendants and to Travelers in the form of a letter. He also apparently obtained a written waiver of the conflict from Travelers. These actions suggest an attempt by Grylls not to shirk his ethical duties, but to comply with them. Although Grylls never secured a waiver from JOA and never approached the Court with information about the conflict, his failure to do so could be logically explained by any number of reasons; an intent to defraud the Court is but one possibility. Notably, the Defendants makes no offer of proof to establish how taking testimony or proceeding with an evidentiary hearing would even reveal such a motive.[8] The Court thus finds that the Defendants have failed to demonstrate by clear and convincing evidence that the third element has been satisfied here.

Moreover, the Court is unpersuaded that the Defendants have presented evidence to support a finding that Grylls' omissions somehow deceived the Court. While, the Court certainly would have wanted to know about any alleged conflict to ensure that the Defendants were aware of their rights and properly represented in this litigation, it would have still reached the same result and granted relief to Travelers based on the merit of its claims, and notwithstanding Akinwusi's

---

[8]The Defendants have presented no evidence, for instance, that Grylls took a position in the Consolidated Electric case that was adverse to the Defendants' interests, or somehow elevated its allegiance to Travelers above his duty of loyalty to the Defendants.

signficant illness. *See Section III, infra.*

For similar reasons, the Court rejects the Defendants' request to use Grylls' undisclosed conflict as a basis for vacating the judgment under Rule 60(b)(6). Through this provision, the Court "may relieve a party . . . from a final judgment, order, or proceeding for . . . [any] reason that justifies relief." A remedy granted pursuant to Rule 60(b)(6) is "circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (citations omitted). Accordingly, the application of subsection 60(b)(6) is appropriate only in "unusual and extreme situations where principles of equity mandate relief." *Id.* at 524. While the Court finds Grylls' failure to disclose the conflict and answer Travelers' dispositive motion to be troubling, his conduct was not sufficiently egregious to justify the setting aside of the Court's judgment. In fact, Grylls' conduct fell far short of the recklessness displayed by the attorneys in the cases cited by the Defendants where courts have granted Rule 60(b)(6) relief. *See e.g., Boughner v. Secretary of Health, Education and Welfare,* 572 F.2d 976, 978 (3rd Cir. 1978) (finding that attorney's conduct in failing to answer summary judgment on behalf of clients reflected "neglect so gross that it is inexcusable" where Local Rules provided that failure to answer motions resulted in finding that party did not oppose such motion, and where during the attorney's representation, he was running a campaign for judicial office, had a large backlog of cases, had failed to oppose summary judgment motions in a total of fifty-two (52) cases, and essentially had left his clients unrepresented.); *Primbs v. United States*, 4 Cl. Ct. 366, 370 (1984) (vacating judgment through Rule 60(b)(6) where attorney failed to respond to summary judgment motion and court's order to show cause why case should not have been dismissed; the court found that counsel "was not merely negligent" but "actively misled

and lulled his client into believing [the] case was proceeding smoothly," and declined to impute counsel's behavior to client since they were not acting as one unit.); *Coleman v. American Red Cross*, 23 F.3d 1091,1096 (6th Cir. 1994) (reversing order of dismissal entered under Fed. R. Civ. P. 41(b) after holding that plaintiffs should not be penalized for their attorney's deliberate violation of an order designed to protect the identity of an HIV-infected blood donor); *Patterson v. Township of Grand Blanc,* 760 F.2d 686, 687-88 (6th Cir. 1985) (reversing district court's dismissal of case with prejudice pursuant to Rule 41(b) because plaintiff was not culpable in attorney's failure to conduct discovery, timely file discovery responses, or obey multiple court orders); *Community Dental Services v. Tani*, 282 F.3d 1164, 1170 (9th Cir. 2002) (reversing entry of default judgment under Rule 60(b)(6) because of "extraordinary circumstances" presented by attorney's "virtual abandonment" of his client in failing to file a stipulation to extend time to file an answer, filing the answer two weeks late, failing to obey repeated requests and orders to serve opposing counsel with a copy of the answer, ignoring orders to initiate settlement discussions, failing to oppose motions, failing to attend a number of hearings, and lying to the client about the progress of the case; the court found that when an attorney is *grossly* negligent (not merely ordinarily negligent), the judicial system loses credibility and the appearance of fairness if an innocent party is forced to suffer drastic consequences.). Accordingly, the Court finds the Defendants' request for Rule 60(b)(6) relief to be unwarranted.

III.

The Defendants also claim that the judgment should be reopened in light of what it characterizes as several meritorious defenses. The Court will consider each of the Defendants' claims *seriatim*.

A.

First, the Defendants claim that their liability under the Indemnity Agreement was never properly triggered. In support of this argument, the Defendants assert that none of the alleged claims submitted to Travelers for payment were "due and owing" as required by the Indemnity Agreement's Default clause, which notes that "[a]ny of the following shall constitute a Default: (a) a declaration of Contract default by any Obligee, . . . (b) actual breach or abandonment of any Contract; . . . [and, *inter alia*] (d) failure to make payment of a properly due and owing bill in connection with any Contract; . . . ." (Indemnity Agreement ¶ 1). It is clear from the plain language of the contract that the Defendants correctly cite one of the ten different circumstance that can give rise to a Default – i.e., the failure to pay any "properly due and owing bill."

However, the Defendants' argument effectively urges the Court to ignore all of the other definitions, including the clause that includes in the definition of Default "a declaration of Contract default by any Obligee." *Id.* According to (1) documents provided by Travelers in support of its original summary judgment brief and (2) a letter appended to the Defendants' own motion for relief from judgment, it is undisputed that on February 23, 2007, the U.S. Government notified JOA that it was declaring JOA to be in Default. Specifically, the Government noted that it would pursue "a Termination for Default due to the Contractor's failure to perform it's [sic] contractual obligations," and that "JOA Construction's right to proceed under [the] contract is terminated." (2/23/07 Letter, ¶ 3, Exhibit 4 to Defendants' Rule 60(b) Motion). In light of these facts, the Court finds that the Army's letter constituted a Default that triggered Travelers' assignment rights under ¶ 6 of the Indemnity Agreement. Paragraph 6 provides that "[i]n the event of a Default, indemnitors assign, convey and transfer to Company all of their rights, title and interests in Property, and Company shall

13

have a right in its sole discretion to [*inter alia*]: . . . (e) require any Obligee to withhold payment of Contract funds unless and until Company consents to its release. . . ." Thus, Travelers properly pursued its rights to assignment of Defendants' contract balances.

Furthermore, the Indemnity Agreement contained an additional clause which provided that, regarding the settlement of claims, "Company shall have the right, in its sole discretion, to determine for itself and indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed." (Indemnity Agreement at ¶ 4). It further provided that Travelers' determination in this regard "shall be final, binding and conclusive upon the indemnitors." *Id.* The Defendants protest that Travelers' issuance of the April 12th letters violated the company's duty under Michigan law to act in good faith in interpreting and executing this ostensibly one-sided clause. It is true that Michigan law recognizes an implied covenant of good faith in the performance and enforcement of every contract, especially where performance is left to the sole discretion of one party. *See generally, Lowe's Home Centers, Inc.*, 147 Fed. Appx. 516 (6th Cir. 2005) (unpublished). However, the Defendants have not persuaded the Court that the mere issuance of the April 12, 2007 letters was done in bad faith, given the information that was available to Travelers at the time.

First, as noted above, Travelers rightfully regarded the Government's February 23, 2007 letter as a circumstance giving rise to a Default under the plain terms of the Indemnity Agreement. Although the Defendants observe that the project was at least 96% complete according to the Government (and more than 99% complete by its own calculations), it is undisputed that the Government believed the project to have been in Default for nearly two years, with minimal effort by the Defendants to complete "unacceptable masonry work, inoperable mechanical units,

14

inoperable controls, . . . life safety issues . . . .[and] many other smaller items. . . ." (2/23/07 Letter at ¶ 3). And contrary to the Defendants' representations, their performance on the TASS project was referenced by Travelers as a basis for claiming indemnification rights, as evidenced by the May 24, 2007 demand letter attached as Exhibit C to the original complaint in this matter. That fact, coupled with the Court's review of the pre-April 12th documents submitted in support of Travelers' motion for leave to file a sur-reply to the Defendants' Rule 60(b) motion, leads the Court to conclude that Travelers acted in good faith in (1) declaring in the April 12th letters that "Subcontractors/Suppliers of JOA have asserted claims for payment"[9] and, more importantly, (2) in pursuing its settlement remedies under the Indemnity Agreement, as it was clearly permitted to do. Accordingly, the Defendants' request for relief from judgment on this basis (and on grounds that Travelers' decision to pursue its contractual remedies amounted to a breach) would be denied.

B.

Despite language in the Indemnity Agreement requiring that any modification of the Agreement be made "only . . . by a written rider to this Agreement," the Defendants next urge the Court to conclude that Travelers, JOA Construction, Akinwusi and the Army orally modified the TASS contract (and, by implication, the Indemnity Agreement) to make the Defendants liable for completing the TASS project only after an independent engineer evaluated the project. (Indemnity Agreement at ¶ 16). Yet, according to the Defendants, Travelers and the Army prevented the

---

[9]Contrary to the Defendants' argument, Travelers' invocation of the Indemnity Agreement on the basis of the pre-April 12th documents furnished to the Court was not *per se* invalid. Those documents tend to substantiate Travelers' claim in the April 12th letters that the Defendants' suppliers had "asserted claims for payment." This is not changed by the fact that (1) the Defendants may have perceived those claims for payment to be invalid or (2) Travelers may have authorized the Defendants to negotiate with the suppliers about those matters.

15

independent evaluation from ever occurring, thereby excusing their performance.

After carefully reviewing the record, the Court finds that this argument is without merit. In *Quality Products and Concepts Co. v. Nagel Precision, Inc.*, 469 Mich 362, 375 (2003), the Michigan Supreme Court reaffirmed its view that contracting parties are free to modify or waive restrictive amendment clauses that require written modification of the terms of an agreement. The Court acknowledged that while one party cannot unilaterally modify a contract, "the mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract." *Id.* at 373. Here, the affidavits presented by Akinwusi and JOA's TASS Project Manager (which attest to the existence of an oral agreement) do not overcome (1) written evidence that the Army had declared a default, (2) the provisions of the Indemnity Agreement making such a declaration a basis for triggering Travelers' remedies under the Agreement, or (3) the provisions of the Indemnity Agreement requiring any modifications to the Agreement to occur in writing. The Defendants present no independent proof of affirmative conduct by Travelers or TASS that plausibly suggests the parties reached a mutual agreement to ignore any of these provisions.

To the contrary, the Defendants' own evidence suggests that Travelers had no intention of allowing them to finish the TASS project, as indicated by the failure to ever send an independent engineer to perform the assessment. Rather than supporting the Defendants' argument that the parties reached a binding, mutual agreement to change course, this conduct is consistent with a finding that the Army believed the Defendants to be in Default, no longer wanted them to work on the project, and that Travelers intended to capitalize on the protections afforded it under terms of

16

the original contract. Inasmuch as there is no clear and convincing evidence that the parties intended to modify the scope of their agreement, the Defendants' attempt to vacate the judgment on this ground would be denied.[10]

C.

The Defendants' remaining arguments warrant only brief consideration. JOA and Akinwusi claim Travelers failed to give the Defendants prior notice and an opportunity to dispute the alleged claims that triggered indemnification, and did not adequately identify the portions of the Indemnity Agreement that gave rise to Travelers' supposed indemnification rights. However, to the extent the Defendants' argument relies heavily on its now-refuted claim that it was entitled to a determination that the claims were actually "due and owing" before it was deemed in Default of the contract, the Defendants' position would be rejected.

Moreover, the significance of the judgment entered against the Defendants does not modify the Court's conclusions. Despite the Defendants' contrary protestations, this matter was resolved on its merits and, thus, Travelers was not awarded a windfall by the Court pursuant to the terms of a default judgment. Thus, the analogy to *Rooks v. American Brass Co.,* 263 F.2d 166, 169 (6th Cir. 1959) and its progeny, all of which urge courts to decide financially significant matters on their merits, is inapposite. For the reasons indicated above, the Court would have reached the same result notwithstanding the size of the verdict or the state of Defendant Akinwusi's physical health.

The Court must also reject the Defendants' suggestion that Akinwusi is not personally liable for indemnification covering contracts entered into before the date of the Indemnification. This

---

[10]So too is the fate of the Defendants' argument that Travelers' alleged obstruction excused the Defendants' duty to perform under the purported modified agreement.

17

position stands indirect contrast to the plain language of the Indemnity Agreement, which was signed both by Akinwusi as an Individual Indemnitor (giving his personal address and social security number), and by JOA Construction as a Corporate Indemnitor, with Akinwusi signing as the Corporate Secretary and giving the company's business address and federal tax identification number. (Indemnity Agreement at 4). Moreover, the Indemnity Agreement specifically indicates that "[t]he obligations of Indemnitors hereunder are joint and several," and indicates that "whereas, in the transaction of business, Bonds have heretofore been and/or may hereafter be executed by Company," and "[i]n connection with the execution, delivery and/or assumption of obligations of such Bonds, Company requires complete indemnification." (Indemnity Agreement at Page 1 and Page 2, ¶ 7).

Finally, the Defendants allege that Travelers may have recovered more money than it was entitled to collect, making reduction of the judgment an available remedy under Fed. R. Civ. P. 60(b)(5). To this end, the Defendants ask the Court to permit discovery and/or an evidentiary hearing to establish the extent, if any, of Travelers actual loss. Similarly, the Defendants argue that Travelers was less than forthcoming about the true extent of its alleged losses / damages prior to the entry of the judgment. Thus, in their view, Travelers' potentially fraudulent accounting also justifies relief from the judgment in the form of discovery and/or an evidentiary hearing under Fed. R. Civ. P. 60(b)(3). The Defendants partially attribute the accounting problems to Travelers' decision to pay for work performed by contractors and subcontractors that is beyond the scope of the Defendants' actual obligations.

Because the Defendants offer only argument – not factual proof – that Travelers may have engaged in inaccurate and/or fraudulent accounting before the entry of the judgment, they are not

entitled to retrieve the information they seek from Travelers under Rule 60(b)(3). Moreover, inasmuch as Travelers has provided a more detailed accounting of the contract balances it has received on the Defendants' accounts, the Court believes relief under Rule 60(b)(5) is unnecessary.[11] This conclusion is buttressed by the Defendants' failure to raise further challenges to Travelers' calculations in the voluminous pleadings they filed with the Court in response to the Company's arguments. The Court, in considering Defendants' request for additional discovery or an evidentiary hearing on these matters, would be inclined to reject the request.

IV.

Therefore, for the foregoing reasons, the Court would deny the Defendants' motion to set aside the judgment under Rule 60(b).

IT IS SO ORDERED.

Dated:　November 18, 2010　　　　　　　　　　s/Julian Abele Cook, Jr.
　　　　　Detroit, Michigan　　　　　　　　　　　　JULIAN ABELE COOK, JR.
　　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on November 18, 2010.

　　　　　　　　　　　　　　　　　　　　　　　　s/ Kay Doaks
　　　　　　　　　　　　　　　　　　　　　　　　Case Manager

---

[11]Rule 60(b)(5) provides relief from a judgment when "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated, or applying it prospectively is no longer equitable."